UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TODD M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-cv-0465-MJD-JMS |
| | ) |
| FRANK BISIGNANO,[2] | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Todd M. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano was automatically substituted as the Defendant in this case when he became the Commissioner of the Social Security Administration on May 7, 2025.

## I. Background

Claimant applied for DIB and SSI in March 2022, alleging an onset of disability as of December 31, 2021. [Dkt. 11-5 at 5, 9.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Jody Odell ("ALJ") on August 1, 2023. [Dkt. 11-2 at 63.] On November 2, 2023, ALJ Odell issued her determination that Claimant was not disabled. *Id.* at 11. The Appeals Council then denied Claimant's request for review on July 30, 2024. *Id.* at 2. Claimant timely filed his Complaint on October 2, 2024, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[3] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is

---

[3] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M. [v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Court will apply in this case.

In his brief, the Commissioner states: "The Supreme Court reiterated the standard courts use to review agency actions, explaining that 'a reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" [Dkt. 15 at 4] (quoting *Garland v. Dai*, 141 S. Ct. 1669, 1679 (2021)). However, *Garland* was an immigration case, and the Supreme Court has noted that not all administrative agency review is created equal.

> The Social Security Act and the APA are different statutes, and courts must remain sensitive to their differences. *See*, *e.g.*, *Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989) (observing that "[a]s provisions for judicial review of agency action go, § 405(g) is somewhat unusual" in that its "detailed provisions . . . suggest a degree of direct interaction between a federal court and an administrative agency alien to" APA review). But at least some of these differences suggest that Congress wanted more oversight by the courts in this context rather than less, see *ibid.*,[13] and the statute as a whole is one that "Congress designed to be 'unusually protective' of claimants," [*Bowen v.*] *City of New York*, 476 U.S. [467, 480 (1986)].

*Smith v. Berryhill*, 587 U.S. 471, 482 (2019) (footnote omitted). Thus, while the Commissioner correctly notes that the Seventh Circuit has stated that "'social-security adjudicators are subject to only the most minimal of articulation requirements,'" [Dkt. 14 at 4] (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)),[4] the Court's duty to conduct a meaningful

---

[4] In addition to quoting *Warnell*, the Commissioner cites to three other cases for this proposition. *See* [Dkt. 15 at 4] (citing *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021); *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021)). While all of those cases discuss the deferential standard applicable to a court's review of an ALJ's decision, none of them contain the "minimal articulation" language that the brief suggests they support. The Commissioner's brief also contains the following statement: "If reasonable minds could disagree on whether a claimant is disabled, the court must affirm the Commissioner's decision." [Dkt. 15 at 4] (citing *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)). That is not a correct statement of the law. Rather, it leaves out a crucial qualifier from *Burmester*; the statement in that opinion is as follows: "**Where substantial evidence supports the ALJ's disability determination**, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *Burmester*, 920 F.3d at 510 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). The Commissioner should take care not to mischaracterize authority in future briefs.

review of the ALJ's decision remains unchanged, which *Warnell* itself recognizes. *Id.* at 1054 ("All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant **meaningful judicial review**.") (citation and quotation marks omitted).

### III.  ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of January 8, 2022. [Dkt. 11-2 at 13.]  At step two, the ALJ found that Claimant had the following severe impairments: "coronary artery disease status post stent placement, peripheral vascular disease/left popliteal artery stenosis, hypertension, depressive disorder, anxiety disorder." *Id*. at 14.  At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.*  The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can manage detailed, but not complex, tasks and maintains the ability to sustain the attention, concentration, persistence, and pace needed to complete those tasks.

*Id.* at 16.

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period. *Id*. at 21.  At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as collator operator (DOT 08.685-010),

marker (DOT 209.587-034), and inspector and hand packager (DOT 559.687-074). *Id*. at 22-23. Accordingly, The ALJ concluded Claimant was not disabled. *Id.* at 23.

## IV.  Discussion

Claimant argues that the ALJ erred in relying on the opinions of the non-examining state agency physicians over that of the consultative physician who examined Claimant on behalf of the state agency.  For the reasons set forth below, the Court agrees.[5]

Dr. James Gatton conducted a consultative examination of Claimant on June 24, 2022. [Dkt. 11-7 at 335.]  He noted the Claimant "walks with a limp favoring the left side" and that he was "able to walk heel to toe, walk on heels, walk on toes, and hop," but was unable to squat. Dr. Gatton concluded:

> This is a 51-year-old claimant with a history of multiple heart attacks.  This claimant should be able to walk for two to three hours out of an eight-hour day. The claimant probably could carry less than 10 pounds frequently and could carry more than 20 pounds on occasion.

*Id.* at 336.  This would preclude the light work the ALJ found Claimant could perform.  *See* 20 C.F.R. 404.1567(b); SSR 83-10, 1983 WL 31251 (Jan. 1, 1983) (light work requires standing or walking for six hours per work day and frequently carrying up to ten pounds).

The ALJ found as following with regard to Dr. Gatton's opinion:

> This opinion is not supported by this one-time evaluation that documented generally normal findings.  The claimant was noted to exhibit a limp with his left leg and was unable to squat but was able to get onto the examination table without difficulty, was able to walk on heels and toes, to hop, and did not require the use of any assistive devices.  In addition, he had 5/5 strength, intact sensation, normal and symmetrical reflexes, and no evidence of extremity edema.  This opinion is not entirely consistent other evidence that documents ongoing reporting of symptoms and generally normal and stable physical examination findings.  In this

---

[5] Claimant raises three issues in his brief.  Because the first is dispositive and requires reversal, the Court need not, and does not, address the other two.

> case, the evidence supports limiting the claimant to work at less than the full range of light with postural limitations but does not support a finding that the claimant requires any additional limitations. Accordingly, to the extent that this opinion is consistent with the evidence, I find it only partially persuasive.

[Dkt. 11-2 at 19.] The ALJ found more persuasive the opinions of the state agency consultants who did not examine Claimant. They determined that Claimant could perform light work with certain postural limitations. In accepting their opinion, the ALJ stated:

> In support of these findings, these consultants cited to evidence, including objective testing, including the arterial duplex findings of left popliteal artery stenosis, and the examination findings of the consultative examiner (Exhibits 3A; 4A; 7A; 8A). These findings are consistent with the subsequent evidence received after the review of these consultants that continues to document ongoing reporting of symptoms but generally stable physical examination findings (e.g., Exhibits 16F/6/10/16/39; 17F/3) and with the claimant's reported activity level, all of which support limiting him to work at the light exertional level with postural limitations. In this case, the evidence does not support a finding that the claimant requires any additional limitations beyond those contained in the above-defined residual functional capacity. Accordingly, I find these prior administrative findings persuasive.

[Dkt. 11-2 at 21.]

"As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). However,

> rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step. *See Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

*Id.*[6]  Thus, an ALJ must "provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor."  *Id.*; *see also Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017) ("'An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice.'") (quoting *Gudgel*, 345 F.3d at 470).

Here the ALJ gave no valid explanation for rejecting Dr. Gatton's opinions in favor of the non-examining physicians' opinions.  The ALJ fails to explain why the normal findings in Dr. Gatton's examination and elsewhere in the record are inconsistent with Dr. Gatton's conclusion.  In addition to the normal findings, Dr. Gatton's examination also contained a glaring abnormal finding—a limp—that is entirely consistent with the objective evidence of record, namely the fact that Claimant was diagnosed with severe stenosis of the left popliteal artery as early as February 2020, [Dkt. 11-7 at 65], and, later, a total occlusion of the distal left superficial femoral artery in December 2022, *id.* at 479.  The ALJ's statement that Claimant's medical records contain "generally normal and stable physical examination findings" may be true, in the sense that most of the findings reported from Claimant's medical appointments and Dr. Gatton's examination were normal, but that does not mean that the ALJ can simply gloss over the one objective abnormality that could be expected to cause the leg cramping and pain Claimant

---

[6] *Beardsley* cites to regulations that have been superseded.  However, the current regulations retain the same principle.  *See* 20 C.F.R. § 404.1520c (current regulation) ("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."); *see also Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (recognizing that ALJ still "must consider that an examining doctor may have more insights than a doctor reviewing evidence in a folder" under current regulation).

complained of[7] and the limp observed by Dr. Gatton and which would seem, on its face, to explain Dr. Gatton's limiting Claimant's walking to two to three hours per workday.

The Commissioner asserts in his brief that "an ALJ may give more weight to an opinion from a state agency physician than to an opinion from a treating or examining source, so long as the ALJ 'examines the appropriate factors under agency regulations and minimally articulates its reasoning for crediting the opinions of the nontreating agency medical experts.'" [Dkt. 15 at 12] (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023)). *Crowell* involved a treating physician, not a state agency examining physician, and explicitly recognized that "[a]n administrative law judge may also discount a treating physician's opinion where the judge suspects that the treating physician might be 'bend[ing] over backwards to assist a patient in obtaining benefits.'" *Crowell*, 72 F.4th at 816 (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). And, in fact, the ALJ in *Crowell* had noted several facts that suggested the treating physician in that case had reluctantly capitulated to his patient's request for assistance in obtaining benefits. Of course, precisely the opposite is true in this case. As the Seventh Circuit has noted, an agency doctor is "unlikely [] to exaggerate an applicant's disability, as the applicant is not his patient and favoritism with applicants would not go down well with the agency." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). That is why, as noted above, when an ALJ takes "the unusual step of giving little weight to the opinion of an agency examining physician," the ALJ must give a "good explanation supported by substantial evidence" for doing so. *Cieszynski v. Kijakazi*, 2023 WL

---

[7] Claimant complained to his cardiologist of left leg pain caused by walking as early as October 2021. [Dkt. 11-7 at 258.]

9

2523499, at *5 (7th Cir. Mar. 15, 2023). Gesturing at "generally normal findings" as to other bodily systems while ignoring the abnormal finding directly related to Claimant's ability to walk sufficiently to perform light work **does not** satisfy this requirement.

Nor does the ALJ's mention of Claimant's reported activity level in crediting the non-examining physicians' opinions constitute the requisite good reason. The ALJ described Claimant's activities as follows in her decision:

> [T]he evidence reveals that the claimant has maintained a high level of activity despite his impairments. He has reported being able to attend to his personal care needs, to prepare meals, to wash dishes, to vacuum, to drive a car, to shop in stores, to watch television, and to spend time with his daughter (Hearing Testimony; Exhibit 4E). The evidence also reveals that the claimant can attend medical appointments as reflected by the medical evidence contained in the record (Exhibits 1F-17F).

[Dkt. 11-2 at 20.] None of the cited activities require Claimant to walk more than two to three hours in an eight-hour period; therefore, it is difficult to understand how those activities are inconsistent with Dr. Gatton's opinion.

The ALJ failed to provide an adequate explanation, supported by substantial evidence, for discounting the examining consultative physician's opinion in favor of the non-examining consultants' opinions. This requires reversal.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 17 OCT 2025

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

10

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.